## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **AMY SIMS,** | ) | 2021 JUN -2 P 3: 12 |
| | ) | |
| **Plaintiff,** | ) | [ ____ ] |
| | ) | |
| | ) | **Civil Case No.:** |
| **v.** | ) | 1:21-cv-395 |
| | ) | |
| **UNIFIRST CORPORATION,** | ) | **JURY DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COMES NOW** Plaintiff, Amy Sims ("Plaintiff"), by and through her undersigned counsel of record, and files this Complaint against Defendant UniFirst Corporation ("Defendant"). As grounds for this Complaint, Plaintiff states the following:

## JURISDICTION AND VENUE

1.     Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and § 1343 and 29 U.S.C. § 2617(a)(2).

2.     The unlawful employment practices described herein were committed in Dothan, Alabama. Dothan is located in Houston County, Alabama, and, accordingly, venue lies in the United States District Court for the Middle District of Alabama, Southern Division, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3.     Plaintiff is a citizen of the United States of America, over the age of nineteen (19) years, a resident of the State of Alabama who is entitled to protection pursuant to the provisions of 42 U.S.C. § 12112 and 29 U.S.C. § 2611(2), and was at all times relevant, an

"employee" of Defendant within the meaning of 42 U.S.C. § 12111(4) and 29 U.S.C. § 2611(3).

4.      Defendant is a foreign corporation functioning within the State of Alabama, is an "employer" within the meaning of 42 U.S.C. § 12111(5) and 29 U.S.C. § 2611(4), and was at all times relevant Plaintiff's "employer."

## ADMINISTRATIVE REMEDIES

5.      Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant.

6.      Charge number 425-2020-00699 (the "Charge") was filed on or about April 7, 2020. (Attached hereto as "**Exhibit A**").

7.      Plaintiff received the Right to Sue for the Charge on or about March 4, 2021. (Attached hereto as "**Exhibit B**").

8.      Plaintiff has now filed this Complaint within ninety (90) days of her receipt of the Right to Sue and has, therefore, exhausted all administrative remedies with respect to the Charge before filing her claims with this Court.

## FACTS

9.      Plaintiff re-alleges and incorporates paragraphs one (1) through eight (8) as if fully set forth herein.

### Plaintiff's Employment

10.     Defendant is an employer under the applicable provisions of the ADA and FMLA, and was, in fact, Plaintiff's employer at all times relevant to this cause of action.

2

11.     Defendant was engaged in commerce and/or in an industry affecting commerce.

12.     Defendant employed more than fifty (50) employees within a seventy-five (75) mile radius for each working day in each of twenty (20) or more calendar weeks in the current and/or preceding calendar year.

13.     Plaintiff has a qualifying disability under the ADA in that she has physical and/or mental impairments that substantially limit one (1) or more of her major life activities, of which Defendant was aware.

14.     In or about February 2010, Defendant hired Plaintiff as a Customer Service Representative ("CSR").

15.     On November 18, 2013, Plaintiff was promoted to Office Administrator.

16.     Plaintiff is a qualified individual under the ADA in that she could perform the essential functions of her job, with or without reasonable accommodation(s), pursuant to 42 U.S.C. § 12111(8).

17.     Plaintiff worked more than one thousand two hundred and fifty (1,250) hours during the twelve (12) months prior to the start of her FMLA leave.

18.     Therefore, Plaintiff was also an eligible employee under the applicable provisions of the FMLA.

19.     In May 2019, Jason Brunson ("Brunson") became General Manager and Plaintiff's supervisor.

20.     Prior to becoming General Manager, Brunson was aware of the need to hire additional staff.

3

21.     However, despite this knowledge, Brunson nonetheless delayed hiring anyone to fill the vacant positions.

22.     Plaintiff repeatedly informed Brunson that she needed assistance as she had a significant amount of work.

23.     Even after Brunson finally hired one (1) individual, Plaintiff still worked long hours, including late nights and on weekends.

**FMLA Leave Request**

24.     On August 3, 2019, Plaintiff requested FMLA leave due to serious health conditions, to wit: Attention–Deficit/Hyperactivity Disorder ("ADHD"); depression; anxiety; Plantar Fasciitis; fluid buildup in her feet; Fibromyalgia; lower back pain due to Degenerative Disc Disease and compressed discs; and lingering effects from a knee surgery.

25.     Brunson was aware of Plaintiff's medical conditions and disabilities as Plaintiff informed him of the same upon his arrival.

26.     Only four (4) days after requesting FMLA leave, on August 7, 2019, Plaintiff was called into Brunson's office and given a Letter of Understanding ("First Letter").

27.     The First Letter alleged a lack of detail in Plaintiff's job duties and that her desk was disorganized.

28.     However, as Plaintiff's desk was out in the open, other employees would bring Plaintiff items and/or tasks that were not hers to complete.

29.     Thus, Plaintiff ultimately had to function as an assistant to all of Defendant's employees at its Dothan, Alabama location.

4

30.     Plaintiff also trained and onboarded new employees and assisted inexperienced employees.

31.     In addition to the foregoing, the First Letter also stated that "your being gone from work often is confusing and causes disruption in our business. I understand you have intermittent FMLA request pending and that is understandable under your circumstances, but I must know when my staff aren't at work even if/when the FMLA is approved. . ."

32.     Brunson thereafter told Plaintiff that she should "back off" from going to the doctor every week.

33.     On August 30, 2019, Defendant granted Plaintiff's request for intermittent FMLA leave to attend medical appointments for the time period of August 30, 2019, through October 25, 2019.

34.     Then, approximately two (2) weeks later, on September 16, 2019, Brunson called Plaintiff into his office and gave her a Final Letter of Expectations ("Final Letter").

35.     The Final Letter alleged that Plaintiff had failed to provide a training schedule to Brunson and that her desk was disorganized.

36.     However, when other employees under Brunson engaged in misconduct and/or were disorganized, they were not coached or disciplined.

**ADA Accommodation Request**

37.     On October 1, 2019, Plaintiff left a voice message for Lindsay Lacourciere ("Lacourciere") in Human Resources ("HR").

38.    In the message, Plaintiff stated that she needed to speak to someone about reasonable accommodation(s) for her disabilities and harassment in the workplace that was not being addressed.

39.    Before returning Plaintiff's call, Lacourciere called Brunson to inform him that Plaintiff had contacted HR.

40.    Then, on October 2, 2019, Lacourciere returned Plaintiff's call, at which time Plaintiff requested a reasonable accommodation(s).

41.    On October 3, 2019, Lacourciere emailed the necessary ADA forms to Plaintiff and told Plaintiff that her doctor needed to complete them.

42.    Later that same day, Plaintiff delivered the ADA forms to her doctor and was told that they would return the forms the following week.

**Termination of Plaintiff's Employment**

43.    On October 4, 2019, only three (3) days after requesting a reasonable accommodation(s) and before Plaintiff could submit the necessary ADA paperwork, Brunson terminated Plaintiff's employment.

44.    When Plaintiff raised the issue of her pending ADA reasonable accommodation request, Brunson stated that Plaintiff's doctor had not submitted the paperwork.

45.    However, it had been less than one (1) week since Plaintiff had received and promptly delivered the ADA forms to her doctor.

46.    Defendant thereafter prevented Plaintiff from collecting her personal belongings.

47.     When Plaintiff attempted to remove her personal belongings, Brunson stated that if she did not stop, he would call the "law" to have Plaintiff removed from the property.

48.     Defendant mailed Plaintiff's personal belongings and, upon receipt, Plaintiff discovered a number of the items were broken.

49.     At the time of Plaintiff's termination, she was using approved intermittent FMLA leave to attend doctors' appointments for her serious health conditions.

50.     Despite Plaintiff's qualification under the FMLA, Defendant interfered with Plaintiff's use of intermittent leave and retaliated against her for the same.

51.     Defendant interfered with and retaliated against Plaintiff when

(a) comments were made regarding Plaintiff's absences;

(b) Plaintiff was disciplined for alleged deficiencies that other employees were not disciplined for; and

(c) Defendant terminated Plaintiff's employment as a result of and while Plaintiff was stilling using intermittent FMLA leave.

52.     At the time of Plaintiff's termination, she had also requested a reasonable accommodation and was in the process of completing the requisite ADA forms.

53.     However, Defendant failed to accommodate Plaintiff when it

(a) did not engage with Plaintiff regarding the reasonable accommodation(s);

(b) did not attempt to accommodate Plaintiff's disabilities; and

(c) did not permit Plaintiff to return the required ADA forms.

54.     Defendant discriminated and retaliated against Plaintiff when it

(a) mistreated Plaintiff;

(b) subjected Plaintiff to different standards as compared to other employees; and

7

(c) terminated Plaintiff before she could submit the requisite ADA forms.

55.    Defendant's unlawful actions resulted in significant financial and emotional damage to Plaintiff.

## COUNT I
## FMLA INTERFERENCE

56.    Plaintiff re-alleges and incorporates paragraphs ten (10) through twelve (12), seventeen (17), and eighteen (18) as if fully set forth herein.

57.    Plaintiff requested FMLA leave to attend medical appointments for her own serious medical conditions, to wit: Attention–Deficit/Hyperactivity Disorder ("ADHD"); depression; anxiety; Plantar Fasciitis; fluid buildup in her feet; Fibromyalgia; lower back pain due to Degenerative Disc Disease and compressed discs; and lingering effects of a knee surgery.

58.    Brunson was aware of Plaintiff's serious health conditions as Plaintiff informed him of the same upon his arrival.

59.    On August 3, 2019, Plaintiff requested FMLA leave.

60.    Only four (4) days after Plaintiff requested FMLA leave, on August 7, 2019, Plaintiff was called into Brunson's office and given the First Letter.

61.    The First Letter stated that "your being gone from work often is confusing and causes disruption in our business. I understand you have intermittent FMLA request pending and that is understandable under your circumstances, but I must know when my staff aren't at work even if/when the FMLA is approved. . ."

8

62.     Brunson also told Plaintiff that she should "back off" from going to the doctor every week.

63.     On August 30, 2019, Defendant granted Plaintiff's request for intermittent FMLA leave to attend medical appointments for the time period of August 30, 2019, through October 25, 2019.

64.     Then, approximately two (2) weeks later, on September 16, 2019, Brunson called Plaintiff into his office and gave her the Final Letter.

65.     Then, on October 4, 2019, Brunson terminated Plaintiff's employment.

66.     At the time of Plaintiff's termination, she was using and still had approved intermittent FMLA leave available to attend doctors' appointments for her serious health conditions.

67.     Therefore, Defendant interfered with benefits to which Plaintiff was entitled under the FMLA.

68.     Defendant's interference with Plaintiff's rights under the FMLA violated the FMLA, 29 U.S.C. § 2615(a)(1), which states it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this title."

69.     Defendant's actions resulted in significant financial and emotional damage to Plaintiff.

9

## COUNT II
## FMLA RETALIATION

70.     Plaintiff re-alleges and incorporates paragraphs ten (10) through twelve (12),

seventeen (17), and eighteen (18) as if fully set forth herein.

71.     Plaintiff requested FMLA leave to attend medical appointments for her own

serious medical conditions, to wit: Attention–Deficit/Hyperactivity Disorder ("ADHD");

depression; anxiety; Plantar Fasciitis; fluid buildup in her feet; Fibromyalgia; lower back

pain due to Degenerative Disc Disease and compressed discs; and linger effects due to her

knee surgery.

72.     Brunson was aware of Plaintiff's medical conditions as Plaintiff informed

him of the same upon his arrival.

73.     On August 3, 2019, Plaintiff requested FMLA leave.

74.     Only four (4) days after Plaintiff requested FMLA leave, on August 7, 2019,

Plaintiff was called into Brunson's office and given the First Letter.

75.     The First Letter stated that "your being gone from work often is confusing

and causes disruption in our business. I understand you have intermittent FMLA request

pending and that is understandable under your circumstances, but I must know when my

staff aren't at work even if/when the FMLA is approved. . ."

76.     Brunson also told Plaintiff that she should "back off" from going to the

doctor every week.

77.    On August 30, 2019, Defendant granted Plaintiff's request for intermittent FMLA leave to attend medical appointments for the time period of August 30, 2019, through October 25, 2019.

78.    Then, approximately two (2) weeks later, on September 16, 2019, Brunson called Plaintiff into his office and gave her the Final Letter.

79.    However, when other employees under Brunson engaged in misconduct and/or were disorganized, they were not coached or disciplined.

80.    Then, on October 4, 2019, Brunson terminated Plaintiff's employment.

81.    Defendant thereafter prevented Plaintiff from collecting her personal belongings and threatened to call the police to have Plaintiff removed from the property.

82.    At the time of Plaintiff's termination, she was using and still had approved intermittent FMLA leave available to attend doctors' appointments for her serious health conditions.

83.    Defendant terminated Plaintiff's employment because she exercised her rights under the FMLA, which is statutorily protected conduct.

84.    Defendant's retaliatory termination of Plaintiff's employment willfully violated the FMLA, 29 U.S.C. §§ 2601, et seq.

85.    Defendant's actions in violation of the FMLA, 29 U.S.C. §§ 2601, et seq., resulted in significant financial and emotional damage to Plaintiff.

11

## COUNT III
## ADA FAILURE TO ACCOMMODATE

86.     Plaintiff re-alleges and incorporates paragraphs ten (10) through thirteen (13) and sixteen (16) as if fully set forth herein.

87.     Plaintiff is disabled within the meaning of the ADA.

88.     Due to Plaintiff's medical conditions, she was and is substantially limited with respect to one (1) or more major life activities.

89.     Plaintiff was and is qualified for her job position with Defendant with or without a reasonable accommodation.

90.     Brunson was aware of Plaintiff's medical conditions and disabilities as Plaintiff informed him of the same upon his arrival.

91.     On October 1, 2019, Plaintiff left a message for Lacourciere in HR, at which time she requested to speak with someone about reasonable accommodation(s) for her disabilities and workplace harassment.

92.     Lacourciere thereafter called Brunson to inform him that Plaintiff had contacted HR.

93.     On October 2, 2019, Lacourciere returned Plaintiff's call, at which time Plaintiff requested a reasonable accommodation(s).

94.     On October 3, 2019, Lacourciere emailed the necessary ADA forms to Plaintiff and told Plaintiff that her doctor needed to complete them.

95.     Later that same day, Plaintiff delivered the ADA forms to her doctor and was told they would return the same by the following week.

96.     On October 4, 2019, only three (3) days after requesting a reasonable accommodation(s) and before Plaintiff could submit the necessary paperwork, Brunson terminated Plaintiff's employment.

97.     When Plaintiff raised the issue of her pending ADA reasonable accommodation request, Brunson stated that Plaintiff's doctor had not submitted the paperwork.

98.     However, it had been less than one (1) week since Plaintiff had received and promptly delivered the ADA forms to her doctor.

99.     Defendant thereafter prevented Plaintiff from collecting her personal belongings and threatened to call the police to have Plaintiff removed from the property.

100.    Therefore, Defendant violated Plaintiff's rights under the ADA when it failed to engage in the interactive process to discuss and determine what reasonable accommodation(s) Plaintiff needed and Defendant could provide.

101.    Defendant's actions resulted in significant financial and emotional damage to Plaintiff.

## COUNT IV
## DISABILITY DISCRIMINATION

102.    Plaintiff re-alleges and incorporates paragraphs ten (10) through thirteen (13) and sixteen (16) as if fully set forth herein.

103.    Plaintiff is disabled within the meaning of the ADA.

104.    Due to Plaintiff's medical conditions, she was and is substantially limited with respect to one (1) or more major life activities.

13

105.   Plaintiff was and is qualified for her position with Defendant, with or without a reasonable accommodation.

106.   Brunson was aware of Plaintiff's medical conditions and disabilities as Plaintiff informed him of the same upon his arrival.

107.   On August 7, 2019, Plaintiff was called into Brunson's office and given the First Letter.

108.   At that time, Brunson also told Plaintiff that she should "back off" from going to the doctor every week.

109.   On September 16, 2019, Brunson called Plaintiff into his office and gave her the Final Letter.

110.   However, when other employees under Brunson engaged in misconduct and/or were disorganized, they were not coached or disciplined.

111.   On October 1, 2019, Plaintiff left a message for Lacourciere in HR, at which time she requested to speak with someone about reasonable accommodation(s) for her disabilities and workplace harassment.

112.   Lacourciere thereafter called Brunson to inform him that Plaintiff had contacted HR.

113.   On October 2, 2019, Lacourciere returned Plaintiff's call, at which time Plaintiff requested a reasonable accommodation(s).

114.   On October 3, 2019, Lacourciere emailed the necessary ADA forms to Plaintiff and told Plaintiff that her doctor needed to complete them.

115.   Later that same day, Plaintiff delivered the ADA forms to her doctor and was told they would return the same by the following week.

116.   On October 4, 2019, only three (3) days after requesting a reasonable accommodation(s) and before Plaintiff could submit the necessary paperwork, Brunson terminated Plaintiff's employment.

117.   When Plaintiff raised the issue of her pending ADA accommodation request, Brunson stated that Plaintiff's doctor had not submitted the paperwork.

118.   However, it had been less than one (1) week since Plaintiff had received and promptly delivered the ADA forms to her doctor.

119.   Defendant thereafter prevented Plaintiff from collecting her personal belongings and threatened to call the police to have Plaintiff removed from the property.

120.   Defendant had knowledge of Plaintiff's serious health condition(s) and need for a reasonable accommodation.

121.   But for Plaintiff's disability, Defendant would not have terminated Plaintiff's employment.

122.   Defendant's actions resulted in significant financial and emotional damage to Plaintiff.

## COUNT V
### ADA RETALIATION

123.   Plaintiff re-alleges and incorporates paragraphs ten (10) through thirteen (13) and sixteen (16) as if fully set forth herein.

124.   Plaintiff is disabled within the meaning of the ADA.

15

125.   Due to Plaintiff's medical conditions, she was and is substantially limited with respect to one (1) or more major life activities.

126.   Plaintiff was and is qualified for her position with Defendant, with or without a reasonable accommodation.

127.   Brunson was aware of Plaintiff's medical conditions and disabilities as Plaintiff informed him of the same upon his arrival.

128.   On August 7, 2019, Plaintiff was called into Brunson's office and given the First Letter.

129.   At that time, Brunson also told Plaintiff that she should "back off" from going to the doctor every week.

130.   On September 16, 2019, Brunson called Plaintiff into his office and gave her the Final Letter.

131.   However, when other employees under Brunson engaged in misconduct and/or were disorganized, they were not coached or disciplined.

132.   On October 1, 2019, Plaintiff left a message for Lacourciere in HR, at which time she requested to speak with someone about reasonable accommodation(s) for her disabilities and workplace harassment.

133.   Lacourciere thereafter called Brunson to inform him that Plaintiff had contacted HR.

134.   On October 2, 2019, Lacourciere returned Plaintiff's call, at which time Plaintiff requested a reasonable accommodation(s).

16

135.   On October 3, 2019, Lacourciere emailed the necessary ADA forms to Plaintiff and told Plaintiff that her doctor needed to complete them.

136.   Later that same day, Plaintiff delivered the ADA forms to her doctor and was told they would return the same by the following week.

137.   On October 4, 2019, only three (3) days after requesting a reasonable accommodation(s) and before Plaintiff could submit the necessary paperwork, Brunson terminated Plaintiff's employment.

138.   When Plaintiff raised the issue of her pending ADA reasonable accommodation request, Brunson stated that Plaintiff's doctor had not submitted the paperwork.

139.   However, it had been less than one (1) week since Plaintiff had received and promptly delivered the ADA forms to her doctor.

140.   Defendant thereafter prevented Plaintiff from collecting her personal belongings and threatened to call the police to have Plaintiff removed from the property.

141.   In retaliation for Plaintiff engaging in statutorily protected activities, including requesting a reasonable accommodation, Defendant terminated Plaintiff's employment in violation of the ADA.

**WHEREFORE**, Plaintiff respectfully requests this Court grant to Plaintiff the following:

A. Back pay for lost income and any other compensatory damages;

B. Reinstatement or front pay if the Court determines reinstatement is impracticable;

C. Liquidated damages equal to the amount of back pay;

17

D. Punitive damages;

E. A reasonable attorneys' fee;

F. Plaintiff's costs and expenses;

G. Interest on all monies owed; and

H. Any and all other relief the Court deems just and appropriate.


Respectfully submitted on this the 2nd day of June 2021.


Jessica M. Wolinsky (ASB-7457-L67O)
Anthony D. Michel (ASB-6809-O64M)
*Attorneys for Plaintiff, Amy Sims*

**WRADY MICHEL & KING**
505 20th Street North, Suite 1650
Birmingham, Alabama 35203
P:  (205) 980-5700
F:  (205) 994-2819
jessica@wmalabamalaw.com
anthony@wmalabamalaw.com


**JURY DEMAND**

Plaintiff demands a trial by struck jury.


Respectfully submitted,


18

**DEFENDANT WILL BE SERVED VIA CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

UniFirst Corporation
c/o Prentice Hall Corporation System Inc.
641 South Lawrence Street
Montgomery, Alabama 36104